**KEITHLEY'S AUCTION SERVICE (Charles J. Keithley), Appellant–Defendant,**

v.

**CHILDREN OF JESSE WRIGHT (Linda Hall), Appellee–Plaintiff.**

No. 31A04–9104–SC–102.

Court of Appeals of Indiana, Fourth District.

Oct. 17, 1991.

Steven A. Gustafson, Michael G. Naville, Lorch & Naville, New Albany, for appellant-defendant.

CONOVER, Judge.

Keithley's Auction Service (Charles J. Keithley, hereinafter Keithley) appeals a judgment by the Harrison County Court, Small Claims Division, in favor of the children of Jesse Wright (Linda Hall, hereinafter Hall).

We affirm.

Keithley raises one restated issue for our review:

> whether the court erred in finding Keithley was not entitled to keep a full commission because the sale was never completed.[1]

Keithley, a licensed auctioneer, entered into a contract with Hall which authorized him to sell two parcels of real estate. The contract required Hall to pay Keithley a minimum of fifty dollars or five percent of the proceeds from the gross sale. The contract further provided that a down payment of $3500 for each parcel would be due from the purchasers at the time their bid on the property was accepted.

Before the auction began, Hall informed Keithley that she would not accept a bid below $55,000 for the combined properties. Certain purchasers bid $70,000 for the properties. Upon acceptance of their bid, the purchasers paid the $7000 down payment. Upon the urging of Keithley, a reluctant Hall paid Keithley $3500 in expectation that the sale would be finalized.

The purchasers were unable to obtain financing on the balance of their bid, and the sale was cancelled. The purchasers forfeited their down payment.

Keithley refused to return any of the $3500 paid to him on the basis that the contract between he and Hall required payment of $3500 without regard to the purchasers' ability to pay for the property. Hall filed suit in which she contended the maximum payment to Keithley should have

---

1. Hall has not submitted a brief. Accordingly, Keithley need only make a *prima facie* showing of reversible error. *D.H. v. J.H.* (1981), Ind. App., 418 N.E.2d 286, 289.

been $350, an amount equalling five percent of the proceeds received for the property. Accordingly, she demanded the return of the remainder minus certain expenses.

The trial court rendered judgment for Hall on the basis Keithley was under the same requirements as a broker. Keithley acquiesces to the trial court's characterization of him as a broker, but argues that Indiana law entitles a broker to recover a full commission irrespective of the consummation of a sale.

■ A distinction exists between the rights of a broker contracting to sell property and one merely contracting to furnish a purchaser. The broker hired to sell the property must close the sale or establish that he produced a purchaser ready and willing to buy at the price and on the terms and conditions proposed by the principal. *Panos v. Prentiss* (1984), Ind.App., 460 N.E.2d 1014, 1016; *Frash v. Eisenhower* (1978), 176 Ind.App. 659, 376 N.E.2d 1201, 1204. The broker hired merely to furnish a purchaser need only establish that he found and furnished a purchaser who was initially accepted by the seller. *Lee v. Bossung* (1956), 127 Ind.App. 388, 138 N.E.2d 913, 914-915.

The very nature of an auction would indicate that the contract between an auctioneer and a seller would require only that a purchaser be supplied. Although the auctioneer may specify in advertising what type of buyer is desired, it would be difficult, if not impossible, to discern the credit worthiness of all bidders at a general auction.

■ However, an auctioneer must have a written contract with the owner of the property to be sold at an auction. IND. CODE 25-6.1-6-4. This contract, in the same manner as a broker's contract, determines the rights of the auctioneer to receive compensation. *See, Brown v. Maris* (1958), 128 Ind.App. 671, 150 N.E.2d 760, 763; 4 I.L.E. Brokers § 21 (1958).

Keithley utilized a form contract, made available by the Indiana Auctioneer's Association, in his dealings with Hall. The contract consisted mostly of blanks for Keithley to fill in to memorialize the details of the particular agreement with Hall. One blank provided that "I or we agree to pay unto Charles J. Keithley $200.00 MINIMUM OR 10% of gross sale on personal property. On real estate $50.00 MINIMUM OR 5% of gross sale." (R. 2).

■ The intentions of the parties to a contract are to be determined by the "four corners" of the document. *Estate of Saemann v. Tucker Realty* (1988), Ind.App., 529 N.E.2d 126, 129, *trans. denied.* However, if the intentions of the parties are not evident because of an ambiguity in the contract language, then we must utilize other means to determine intent. The ambiguity test is whether reasonable men would find the contract subject to more than one construction. *Ebert v. Grain Dealers Mutual Insurance Co.* (1973), 158 Ind.App. 379, 303 N.E.2d 693, 698. When, as here, the ambiguity arises because of language used in the contract and not because of extrinsic facts, then interpretation of the contract is a matter of law to be determined by the trial court. *First Federal Savings Bank v. Key Markets, Inc.* (1990), Ind., 559 N.E.2d 600, 604.

The compensation provision of the contract could be fairly read to mean that Keithley was to receive the minimum in case of no sale or five percent of the gross proceeds received in event of a completed sale. It could also be read to mean that Keithley was to receive the minimum or five percent of any proceeds received. Finally, it could be read to mean that Keithley was to receive the minimum or five percent of the gross sales price irrespective of completion of the sale.

■ Although the Indiana Auctioneer's Association provided the basic form contract, Keithley provided the particular terms of the contract with Hall. An ambiguous contract is construed against the party who furnished and drafted the agreement. *Barrick Realty Co. v. Bogan* (1981), Ind.App., 422 N.E.2d 1306, 1308. If Keithley intended the provision to require payment of five percent of the bid price at the time the bid was accepted regardless of

the bidder's ability to pay, a provision certainly consistent with nature of auction sales, he could have done so. Instead, he drafted the contract in a manner which could fairly be interpreted to state he was entitled to receive a percentage of the gross proceeds only upon finalization of the sale.

We cannot say that the trial court erred in its interpretation of the contract.

Affirmed.

MILLER and STATON, JJ., concur.